UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| ANDRE DARNELL OGBURN,<br><br>　　　　Plaintiff,<br><br>v.<br><br>JAMES WARNER,<br><br>　　　　Defendant. | Case No. 21-11768<br>Honorable Paul D. Borman<br>Magistrate Judge Elizabeth A. Stafford |

**AMENDED
REPORT AND RECOMMENDATION TO GRANT DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT
[ECF NO. 24]**

### I.　Introduction

Plaintiff Andrew Ogburn, a prisoner of the Michigan Department of Corrections (MDOC) proceeding pro se, sues MDOC Sergeant James Warner under 42 U.S.C § 1983, alleging that Warner retaliated against him and used excessive force in violation of the First and Eighth Amendments. ECF No. 1.  The Honorable Paul D. Borman referred the case to the undersigned for all pretrial matters under 28 U.S.C. § 636(b)(1).  ECF No. 29.

Warner moves for summary judgment, arguing that he applied reasonable force, that there was a nonretaliatory basis for his actions, and

that he has a right to qualified immunity. ECF No. 24. When Ogburn did not respond to the motion, this Court ordered him to show cause in writing "why the claims against [him] should not be dismissed for the reasons described in the motion for summary judgment." ECF No. 27. Ogburn filed a response to the order to show cause that this Court treats as a response to Warner's motion. ECF No. 28. For the reasons below, the Court **RECOMMENDS** that Warner's motion be **GRANTED**.

II.     Background

Ogburn claims that Warner refused to accept Ogburn's grievance under the Prison Rape Elimination Act (PREA). ECF No. 24-6, PageID.734. At the time, in early November 2022, Ogburn was quarantined for COVID-19 in a segregation cell. *Id.*, PageID.732; ECF No. 24-2, PageID.120; ECF No. 24-5, PageID.611. Ogburn said during his August 2022 deposition that he was not sure, but he believed that the grievance stemmed from an officer staring at him while he was in the bathroom. ECF No. 24-6, PageID.734. He forgot the officer's name. *Id*.

Ogburn claims that he tried to choke himself the next day, November 3rd, by tightening a bedsheet around his neck because he was angry that Warner had refused his grievance. *Id*., PageID.740-741. Although Ogburn did not tie the sheet to anything or tie it in a knot, he claims that he was

attempting suicide. *Id*. After an officer summoned Warner, he helped escort Ogburn to health care for an evaluation. ECF No. 24-2, PageID.120. Nurse Lisa Adray examined Ogburn and found no evidence that he was injured. ECF No. 24-5, PageID.306-307. But Ogburn would not follow commands or answer questions except to say, "It's sad that a guy has to go to such extremes to get help." *Id*., PageID.306; ECF No. 24-6, PageID.752-753. Adray concluded that Ogburn had suicidal or self-harming thoughts. ECF No. 24-5, PageID.306. Officers then tried to place him in a suicide prevention gown. ECF No. 24-2, PageID.121; ECF No. 24-5, PageID.610-611.

Warner says that he asked Ogburn if he would cooperate with the officers removing his clothing so that they could put in him the gown. ECF No. 24-2, PageID.121; ECF No. 24-6, PageID.746. "Ogburn did not comply, became more agitated, and began yelling that he wanted [Warner] to leave." ECF No. 24-2, PageID.121. And Warner said that when he tried to cover Ogburn's face, nose, and mouth with his COVID-19 mask, Ogburn repeatedly spit and blew his mask down. *Id*., PageID.121-122.

Ogburn denied Warner's account. ECF No. 24-6, PageID.746-747. Ogburn testified that he was sitting in health care, with his handcuffs removed, when Warner and Officer Nicholas Smith stood him to his feet.

*Id.* Ogburn then "exposed" Warner to the medical staff, telling them that Warner caused his suicide attempt by refusing to accept the PREA grievance. *Id.*, PageID.747, 758. Ogburn stated that Warner wanted him to be quiet about the grievance, so when Ogburn continued to talk, Warner retaliated by slamming him to the ground and injuring his jaw. *Id.*, PageID.750, 756, 758. Warner said nothing in his affidavit about a PREA grievance. ECF No. 24-2. He claimed that Ogburn was agitated because Warner had denied a request to remove an officer assigned to segregation. *Id.*, PageID.121.

Warner said that, because of Ogburn's active resistance in the healthcare unit, he put Ogburn on the floor and "secured his head with a skeletal lockout." *Id.*, PageID.122. Warner "used only the force necessary to gain compliance from an angry, suicidal prisoner resisting direct orders." *Id.* Corrections Officer Nicholas Smith, who was present during the incident, corroborates Warner's account by affidavit. ECF No. 24-3. But Ogburn testified that the officers lied about him spitting and blowing his mask. ECF No. 24-6, PageID.748-749. Though Ogburn had been quarantined in the COVID-19 unit, he claimed that he wore no mask at all. *Id.*, PageID.748-749.

4

All agree that the officers restrained Ogburn, cut off his clothes, dressed him in a suicide prevention gown, and escorted him back to a segregation cell. *Id.*, PageID.751; ECF No. 24-2, PageID.123. At Warner's instruction, Smith sat one-on-one with Ogburn until a prisoner observation aide arrived. ECF No. 24-6, PageID.752.

Ogburn claims that Warner again used excessive force on November 5, 2020. *Id.*, PageID.762-763. Ogburn testified that he received most, but not all, of a bag lunch while he was quarantined. *Id*. To get attention about the food shortage, he "put his arm in the food tray slot to prevent [an officer] from closing it" and refused to remove his arm after he was ordered to do so. *Id.*, PageID.763, 766-767. Warner told Ogburn to remove his arm from the slot so it could close. *Id.*, PageID.764, 767-768; ECF No. 24-2, PageID.124. Warner stated by affidavit that Ogburn repeatedly refused to remove his arm and said, "Your racist ass is going to have to beat my ass to close it." ECF No. 24-2, PageID.124-125. Ogburn denied saying that to Warner, but he admitted that he repeatedly refused to remove his arm from the slot. ECF No. 24-6, PageID.771.

Warner stated that Ogburn then pushed back against him closing the food slot, so Warner sought permission from the acting captain to use his electronic control device (ECD) if necessary. ECF No. 24-2, PageID.124.

5

Permission was granted, and he displayed the ECD with it lit up with electricity to get Ogburn to comply.  *Id*.  But Ogburn still forcibly resisted his efforts to close the food slot and did not remove his arm until Warner used a three second "drive stun."  *Id*., PageID.125.  Ogburn denied pushing back against Warner and said that Warner gave no warning before tasing him in the arm.  ECF No. 24-6, PageID.769-770, 772-773.

### III. Analysis

#### A.

"The Court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  The party seeking summary judgment bears the initial burden of informing the Court of the basis for its motion and must specify the portions of the record that show the lack of a genuine dispute as to any material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  If the movant satisfies this burden, the burden shifts to the non-moving party to go beyond the pleadings and set forth specific facts showing a genuine issue for trial.  *Id*. at 324.  The Court must view the factual evidence in the light most favorable to the non-moving party.  *Scott v. Harris*, 550 U.S. 372, 380 (2007).  But "[t]he failure to present any evidence to counter a well-supported motion for summary

judgment alone is grounds for granting the motion." *Everson v. Leis*, 556 F.3d 484, 496 (6th Cir. 2009).

**B.**

The Court will first address Ogburn's excessive force claims. Whether summary judgment of those claims should be granted turns on an assessment of objective and subjective components. *Cordell v. McKinney*, 759 F.3d 573, 580 (6th Cir. 2014). The subjective component addresses officials' state of mind, and whether "force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Id*. (cleaned up). "The objective component requires the pain inflicted to be sufficiently serious. This component requires a contextual investigation, one that is responsive to contemporary standards of decency." *Id*. (cleaned up).

But even when the inmate suffers no serious injury, prison officials who use force maliciously and sadistically to cause harm violate the Eighth Amendment. "Otherwise, the Eighth Amendment would permit any physical punishment, no matter how diabolic or inhuman, inflicting less than some arbitrary quantity of injury." *Id*., at 581 (cleaned up).

Here, the evidence shows that Ogburn did not suffer a sufficiently serious injury and Warner did not act sadistically and maliciously, so

7

Warner's motion for summary judgment should be granted.

**1.**

The Court begins with the November 3rd incident when Warner placed Ogburn in a suicide prevention robe. Arguing that Ogburn did not suffer a sufficiently serious injury, Warner provides a medical report showing that Ogburn complained of "jaw and chin pain" but refused to have the nurse assess him. ECF No. 24-5, PageID.304. Ogburn testified that his jaw was "messed up" and "swollen," and he had a "cut" and "split on the bottom of his chin" that left a scar. ECF No. 24-6, PageID.778. Comparing Ogburn's claimed injuries to precedential case law, the Court finds that the injuries Ogburn describes were *de minimis*.

In *Hudson*, the inmate suffered "bruises, swelling, loosened teeth, and a cracked dental plate" that were "not *de minimis* for Eighth Amendment purposes." *Hudson v. McMillian*, 503 U.S. 1, 10 (1992). But in *Lockett v. Suardini*, the prison officials' use of force was a *de minimis* response to the plaintiff's aggressive behavior. 526 F.3d 866, 874-76 (6th Cir. 2008).

> Shoving, grabbing, and bending back two of Lockett's fingers also required only minimal force and was reasonably related to the need for forcibly bringing Lockett under control and returning him to his cell. This conclusion is reinforced by the fact that Lockett, by his own account, suffered at best only minor lacerations and cuts, and that undisputed evidence

8

showed no dislocation or fracture in his hand.

*Id.* (cleaned up). Ogburn's minor injuries are more comparable to the inmate's in *Lockett*. But his Eighth Amendment claim would be viable if Warner acted maliciously and sadistically. *Cordell,* 759 F.3d at 580-81.

Ogburn denied that Warner's actions were prompted by him being agitated or upset, or resisting efforts to fix his mask and put him in a suicide prevention gown. *Id.*, PageID.746-750. Ogburn testified that Warner assaulted him to stop him from disclosing Warner's failure to accept his PREA grievance. But the required "contextual investigation" (*see Cordell,* 759 F.3d at 580-81), including a review of Ogburn's own testimony, reveals that Warner acted to protect Ogburn from hurting himself rather than treating Ogburn sadistically or maliciously.

Ogburn acknowledges that he tightened a bedsheet around his neck in a purported suicide attempt. ECF No. 24-6, PageID.740-741. Warner thus escorted Ogburn to health care for an evaluation. ECF No. 24-2, PageID.120. After Ogburn was released by the nurse, Warner acted to get Ogburn into a suicide-prevention robe and then have him under one-on-one watch. *Id.*, PageID.123; ECF No. 24-5, PageID.304-308; ECF No. 24-6; PageID.751-752.

Ogburn's testimony that Warner acted maliciously on November 4th is too unbelievable. Although courts seldom assess credibility at the summary judgment states, "[e]vidence that is too incredible to be accepted by reasonable minds does not raise an issue of credibility to defeat a motion for summary judgment." *Allstate Ins. Co. v. Cannon*, 644 F. Supp. 31, 33 (E.D. Mich. 1986) (Cohn, J); *see also Top Notch Prods. Inc. v. Bank One Co.*, No. 05-72294, 2007 WL 925960, at *3 (E.D. Mich. Mar. 27, 2007) (Tarnow, J). Ogburn alleges that he tried to commit suicide by squeezing a sheet around his neck, but he did not tie the sheet to anything. ECF No. 24-6, PageID.740-741. And Ogburn claims that he exposed Warner for refusing to accept a PREA grievance, but Ogburn remembers neither who the grievance was against nor what the alleged offender did. *Id.*, PageID.734. Ogburn testified, "I'm not too sure but I think he was looking at me while I was using the bathroom." *Id*.

Even if an officer had viewed Ogburn using the bathroom, that would not violate PREA. *See Does 8-10 v. Snyder,* 945 F.3d 951, 955 (6th Cir. 2019) (describing PREA as being intended to protect prisoners from rape and other sexual victimization). And inmates have no right to privacy in bathrooms and other parts of the prison where they undress. *See Smith v. Long*, No. 3:18-CV-00061, 2018 WL 3831394, at *5 (M.D. Tenn. Aug. 13,

2018) (noting the inmates have "a minimal right to bodily privacy" that is not violated when guards view inmates of the same sex in the bathroom stall); *McNabb v. Long*, No. 3:18-CV-0067, 2018 WL 2318342, at *6 (M.D. Tenn. May 22, 2018) (citing courts holding that the placement of cameras in restrooms, showers, and dressing quarters does not violate an inmate's right to privacy); *Mitchell v. Blount Cnty. Det. Facility*, No. 3:21-CV-139-CEA-HBG, 2021 WL 1700346, at *5 (E.D. Tenn. Apr. 29, 2021) (same). So Warner would have had good reason to reject Ogburn's alleged PREA grievance and no reason for concern about Ogburn disclosing that rejection.

Also unbelievable is Ogburn's claim that he wore no mask when he was in the health care unit. At that time—a most dangerous phase of the pandemic—he had been "in segregation due to CoVid quarantine protocol." ECF No. 24-5, PageID.611; *Wilcox v. Washington*, No. 2:20-CV-221, 2020 WL 6737431 (W.D. Mich. Nov. 17, 2020) (describing the protocols in place at the MDOC in 2020 to reduce the spread of "the deadly COVID-19 virus."). Ogburn's claim that he was taken to health care without wearing a mask, and thus permitted to possibly expose the officers and health care staff to a deadly virus, is nonsensical.

11

In sum, the claim that Warner acted to stop Ogburn from exposing permissible conduct that was committed by an unknown officer—rather than to outfit Ogburn with a straight-jacket and fix his mask—is too incredible to defeat summary judgment.

**2.**

Ogburn's excessive force claim from the November 5th food-slot incident fares no better. Ogburn suffered only a *de minimis* injury to his arm. A nurse at the health care clinic noted a "break in skin on right upper forearm, and redness surrounding the area with a small break in skin around the posterior side of the forearm/elbow area," and Ogburn reported pain in his arm. ECF No. 24-5, PageID.301.

And Warner did not sadistically or maliciously harm Ogburn. Ogburn put his arm in the food slot to prevent it from closing and, after he repeatedly refused to remove it, Warner used a three-second "drive stun" on his forearm. ECF No. 24-2, PageID.124-125; ECF No. 24-6, PageID.763-768. Ogburn admitted in his deposition that he "was holding his arm in the tray slot until he got what he needed." ECF No. 24-2, PageID.124; ECF No. 24-6, PageID.768-772 (cleaned up).

Prison officials may use physical force, like tasers, to "compel

obedience by inmates." *Anderson v. Strode*, No. 1:16CV-P60-GNS, 2018 WL 4623397, at *3 (W.D. Ky. Sept. 26, 2018), *aff'd*, No. 18-6139, 2019 WL 5624508 (6th Cir. May 17, 2019) (cleaned up); *see also Caldwell v. Moore*, 968 F.2d 595, 600 (6th Cir. 1992) (collecting cases about upholding use of stun guns against unruly prisoners to restore discipline); *Jennings v. Mitchell*, 93 F. App'x 723, 725 (6th Cir. 2004) (finding no constitutional violation for pepper spraying prisoner who repeatedly refused direct orders to exit shower).

Thus, summary judgment of Ogburn's excessive force claims should be granted.

## C.

Warner also seeks summary judgment of Ogburn's retaliation claim. To succeed on his retaliation claim, Ogburn must show that: (1) he was engaged in conduct protected by the First Amendment; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that protected conduct; and (3) that the adverse action was motivated by the protected conduct. *Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999). Ogburn's retaliation claim fails because there is no evidence that he engaged in protected conduct.

"An inmate has a right to file non-frivolous grievances against prison

officials on his own behalf, whether written or oral." *Maben v. Thelen*, 887 F.3d 252, 265 (6th Cir. 2018) (cleaned up).  But "the right to file grievances is protected only insofar as the grievances are not frivolous." *Id*. at 264 (cleaned up).  Here, as noted, Ogburn claims to have attempted to give Warner a PREA grievance against unknown officer who may have watched him in the bathroom.  ECF No. 24-6, PageID.734.  Even if true, Ogburn's grievance would have been frivolous, as inmates have no protectible right to privacy in bathrooms.  *See Smith*, 2018 WL 3831394 at *5; *McNabb*, 2018 WL 2318342 at *6; *Mitchell*, No. 3:21-CV-139-CEA-HBG, 2021 WL 1700346, at *5.

### D.

The Court next addresses whether Warner is entitled to qualified immunity.  Qualified immunity applies when, viewing the evidence in a light most favorable to the plaintiff, the defendant did not violate a clearly established constitutional right.  *Est. of Carter v. City of Detroit*, 408 F.3d 305, 311 (6th Cir. 2005).  For the reasons stated above, Warner violated no constitutional right, so he has a right to qualified immunity.

## IV.  Conclusion

The Court **RECOMMENDS** that Warner's motion for summary judgment (ECF No. 24) be **GRANTED**.

                                                  s/Elizabeth A. Stafford
                                                  ELIZABETH A. STAFFORD
                                                  United States Magistrate Judge

Dated: July 13, 2023

## NOTICE TO THE PARTIES ABOUT OBJECTIONS

Within 14 days of being served with this report and recommendation, any party may serve and file specific written objections to this Court's findings and recommendations. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(2). If a party fails to timely file specific objections, any further appeal is waived. *Howard v. Secretary of HHS*, 932 F.2d 505 (6th Cir. 1991). And only the specific objections to this report and recommendation are preserved for appeal; all other objections are waived. *Willis v. Secretary of HHS*, 931 F.2d 390, 401 (6th Cir. 1991).

Each **objection must be labeled** as "Objection #1," "Objection #2," etc., and **must specify** precisely the provision of this report and recommendation to which it pertains. Within 14 days after service of objections, **any non-objecting party must file a response** to the objections, specifically addressing each issue raised in the objections in the same order and labeled as "Response to Objection #1," "Response to Objection #2," etc. The response must be **concise and proportionate in length and complexity to the objections**, but there is otherwise no page

limitation. If the Court determines that any objections lack merit, it may rule without awaiting the response.

## CERTIFICATE OF SERVICE

The undersigned certifies that this document was served on counsel of record and any unrepresented parties via the Court's ECF System to their email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on July 13, 2023.

                                                s/Marlena Williams
                                                MARLENA WILLIAMS
                                                Case Manager